# CHARLESTON.

STATE *v.* DORSEY FURR

AND

STATE *v.* CHARLIE LORENTZ

.(Nos. 5385 and 5384)

Submitted March 2, 1926.    Decided March 9, 1926.

1. STATUTES—*If Provisions of Amendatory Act Are Germane to Purposes Expressed in Title of Original Act, and Not Inconsistent Therewith, Reference Thereto in Title of Amendatory Act is Sufficient (Const. art. 6, § 30).*

    If the provisions of an amendatory act are germane to the purposes expressed in the title of the original act and not inconsistent therewith, section 30, article VI of the constitution, will be satisfied by reference thereto in the title of the amendatory act.    (p. 184.)

    (Statutes, 36 Cyc. pp. 1030, 1031.)

2. CONSTITUTIONAL LAW—*Doubt As to Constitutionality of Act Should Always be Resolved in Favor of its Validity.*

    If there be any doubt as to the constitutionality of an act, that doubt should always be resolved in favor of the validity of the act.    (p. 184.)

    (Constitutional Law, 12 C. J. § 220.)

3. STATUTES—*Section of Statute May be Amended by Adding Thereto New Section if it Relates to, and is Germane to, Act Proposed to be Amended; Title of Amended Act Need Not Specifically Enumerate Section of Act Amended (Const. art. 6, § 30).*

    A section of a statute may be amended by adding thereto a new section, provided the section added relates to and is germane to the act proposed to be amended. The title of an

amendatory act need not specifically enumerate the section of the act amended.   (p. 184.)

(Statutes, 36 Cyc. pp. 1030, 1055, 1059.)

4. CONSTITUTIONAL LAW—*If Question as to Validity of Some Part of Act Not. Actually Involved is Raised, No Decision Thereon is Proper, and Should be Declined (Acts 1921, c. 109, § 35a).*

If among other questions raised there be one as to the validity of some part of an act of the Legislature which is not actually involved, no decision thereon is proper, and should be declined.   (p. 185.)

(Constitutional Law, 12 C. J. § 212.)

5. INFANTS—*Under Statute, Prohibiting Owner to Permit Persons Under Particular Age to Play Pool in His Place of Business; Which is Silent as to Owner's Knowledge, Indictment Need Not Allege That he Knew Fact; Under Statute Prohibiting Owner Permitting Persons Under Particular Age to Play Pool in His Place of Business, Which is Silent as to Owner's Knowledge, Evidence Need Not Show That He Knew Fact (Code, c. 32, § 164; Acts 1919, c. 102, § 35; Acts 1921, c. 109, § 35a; Acts 1905, c. 36).*

Where a statute makes it an offense for the owner to permit persons under a particular age to play at pool in his place of business, and the statute is silent as to the owner's knowledge or intent, the indictment need not allege nor the state's evidence show that he knew the fact.   (p. 185.)

(Infants, 31 C. J. § 20.)

(NOTE:  Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Gilmer County.

Dorsey Furr and Charlie Lorentz were separately convicted for permitting persons under 18 years of age to play pool in their respective pool rooms, and they bring error.

*Affirmed.*

*C: M. Bennett* and *R. F.. Kidd,* for plaintiffs in error.

*Howard B. Lee,* Attorney General, *R. A. Blessing* and *J. Luther Wolfe,* Assistant Attorneys General, for the State.

MILLER, JUDGE:

Defendants were each separately indicted, tried and con- victed for unlawfully permitting persons under the age of

eighteen years to play at the game of pool in their respective pool rooms, in Glenville, Gilmer County, where it is charged each was the owner and licensee of his pool room, the person so designated in the indictment against Furr being Douglas C. Bain, and the one designated in the indictment against Lorentz being William Smith.

The indictments were founded on section 35a, chapter 109 Acts of the Legislature of 1921. A demurrer was interposed to each indictment, which was overruled; then pleas of not guilty, on which issues the cases were tried before juries. The trials resulted in a verdict of guilty in each case, followed by a motion for a new trial, and in arrest of judgment in each case, all overruled; and the judgment complained of in each case was that the defendant pay a fine of $25.00 and the costs of the prosecution and that the pool room license of each licensee be revoked.

On the trial before the juries impaneled there was no conflict in the evidence as to any material fact. In the Furr case, first tried, the defendant offered no evidence of any kind; and in the Lorentz case the only evidence offered related to the lack of knowledge of defendant that Smith was under eighteen years of age, and Smith's alleged representation that he was over eighteen years when permitted to play in defendant's pool room, issues of fact which the trial court by its instructions to the jury evidently regarded as immaterial.

The principal proposition relied on to reverse the judgments in both cases is that section 35a of the amendatory act of 1921 is unconstitutional and void, because the title of the act fails to express therein the object of the act, as required by section 30, article VI of the state constitution. The act is entitled, ''An Act to amend and reenact sections one, thirty-five, thirty-nine and sixty-four of chapter thirty-two of Barnes' Code of West Virginia of one thousand nine hundred and eighteen, as amended and reenacted,'' etc. There is not otherwise expressed therein the purpose to add by way of amendment to said section 35 sections 35a and 35b, as provided in the enacting clause; and it is contended that the omission renders these added sub-sections absolutely void and unenforceable. So the controlling question is, is the subject of said section

35a sufficiently comprehended in the title of the act to amend said section 35? As lastly amended and re-enacted before the act of 1921, by chapter 102, Acts 1919, section 35, then and now, relates to the certificate or license to keep "a hotel or tavern, eating house, or restaurant, or bowling alley, billiard table or bagatelle, or any table of like kind, or turf, or baseball exchange," and requires such certificate or license to specify the house in which it is to be kept or carried on, and provides that to keep or carry on the same at a different place shall be deemed a violation of this chapter, and further provides that: "Other licenses shall be deemed co-extensive with the county subject to such regulations as may be prescribed by the state tax commissioner, but of no effect beyond the limits of the county unless otherwise herein provided."

By the enactment of 1921, the main section 35 was amended by omitting from the classes of business requiring the place thereof to be specified in the license "turf, or baseball exchange," and inserting "taxi-cab stand, or any place of like kind," also the proviso, "that where such place is situated in an incorporated city or town, the council or other governing body thereof shall have exclusive power and right to grant such licenses and shall have all the rights and powers herein granted to the county court."

Section 35a, the one in question here, relates to the same subject as the principal section, by requiring the licensee to apply in writing to the county court, stating therein the house and fully describing the place for which such license is desired, and empowering the county court, at its discretion, to grant or refuse such application, also providing that the licensee, his servants, agents and employees shall not permit any person under the age of eighteen years to play at any of the games referred to, or to remain or loiter in such place, whether playing at such games or not, where such games are played, and shall not in any way, shape or form permit any one to bet anything of value upon any such game, nor permit any one to bring any intoxicating liquors of any kind into such house in which the business is being carried on. It further provides that any licensee, his servants, agents or employees, who shall violate any of the provisions of said sec-

tion shall be guilty of a misdemeanor, and upon conviction thereof, be fined by any court, including justices of the peace having jurisdiction, and police justices, not less than twenty-five dollars, nor more than two hundred dollars, and that they may be imprisoned not exceeding ninety days, or both, at the discretion of the court; and further providing that, ''when any such licensee, his servant, agent or employee is convicted under the provisions of this section of any offense set out herein, in addition to all other punishments such licensee shall forfeit his license, and in addition thereto no license shall be granted by any county court for any of the purposes set out in this section for a period of one year from and after the day of such conviction, in the particular room for which license was granted.''

Prior to the act of 1921, the punishment for violations of any of the provisions of the act was prescribed by section 164 of chapter 32 Barnes' Code 1918, same as section 164, chapter 32 Barnes' Code 1923, the punishment thereby prescribed being the same as in section 35a, except as to the maximum fine that might be imposed, and as to the revoking of the license and the denial of the licensee to another license to carry on the same business at the same place for one year. It will be observed that the judgments in these cases do not in terms undertake to deprive the defendants of new licenses to carry on business in the same places, and whether that part of the section which relates to that subject be valid or invalid for any cause, is not a question presented to us for decision.

It is manifest that the main purpose of section 35a was, first, to require that the application for the license should be in writing, second, to regulate the business of the licensee by prohibiting playing by persons under eighteen years of age at any game, or loitering in the room where played, and the bringing in of any intoxicating liquors to such gaming room, and prescribing the punishment for a violation of the statute, made a misdemeanor thereby and punishable as prescribed by the act.

Chapter 32 of the Code, relating to licenses in general, has been several times amended, and the sections thereof changed by numbers and otherwise. See Acts 1863, 1877, 1887, 1894,

1919, and 1921. Section 35 as now contained in the Code, as to subject matter, first appeared in the Acts of 1905, chapter 36. The act of 1905 was entitled: "An Act to amend and re-enact chapter 32 of the Code of West Virginia, relating to regulations respecting licenses, injury to persons arising from illegal sales of intoxicating liquors—remedy therefor, and amount of rate of tax on each subject of taxation." The title of the act of 1919 was: "An Act to amend and re-enact sections one, three, four, ten, thirty-four, thirty-five, thirty-seven, thirty nine, * * * of chapter thirty-two, and section sixty-four of chapter thirty-nine, acts of one thousand nine hundred and seventeen, and adding sections * * * and repealing sections * * * of chapter thirty-two of the code of one thousand nine hundred and sixteen, relating to regulations respecting licenses and license taxes."

The subject matter of section thirty-five in the Acts of 1905, 1919 and 1921, is the same, unless the matter of sub-section 35a in the act of 1921 constituted new matter, not within the subject matter of section 35 of the act. We thing section 35a related to the same subject as the principal section, and that the reference in the act of 1921 to section 35 was a sufficient expression of the purpose of the act to amend it by adding section 35a. In this respect the case differs from that involved in *Stewart* v. *Tennant,* 52 W. Va. 559, syl. 9, relied on by defendants' counsel. It differs also from the act involved in *McNeeley* v. *Oil Company,* 52 W. Va. 616, also relied on by counsel. In that case the title of the act was: "An Act concerning the limitation of actions in certain cases:" Held to be too general and indefinite, and to infringe the constitutional provision. In the case here the several acts of which the act of 1921 is an amendment, related to chapter 32 of the Code, covering all kinds of business for which licenses are required, and the regulation thereof. This was the one object, and was sufficiently expressed in the titles of the several acts, from that of 1905 to 1921. Not only do these acts, but all acts prior thereto relating to licenses, cover the business of operating billiard tables and tables of like kind, the later acts specifically mentioning pool tables, and the rooms in which they are to be operated.

The general proposition relied on by the attorney general seems applicable and to be fully supported by the authorities cited, namely, that: ''Where the title of an original act sufficiently expresses its object in the manner required by the constitution, an act amendatory thereof or to be substituted therefor, if its provisions are germane to the purpose expressed in the title of the original and' not inconsistent therewith, may, by its title, simply refer to the section of the original act which it is intended to amend, and this will be a sufficient compliance with section 30 of article 6 of the Constitution.'' *Hood* v. *City of Wheeling,* 85 W. Va. 578; *Carnegie Natural Gas Co.* v. *Swiger,* 72 W. Va. 557; *Roby* v. *Sheppard,* 42 W. Va. 286; *Heath* v. *Johnson,* 36 W. Va. 782; *State* v. *Mines,* 38 W. Va. 125; *Shields* v. *Bennett,* 8 W. Va. 74; 25 R. C. L. 855.

If therefore the subject matter of section 35a was germane to the subject of the act, it was within the title of the act. We do not see how it could be fairly contended that it does not relate to the general subject of the statute, and of the amendatory act, nor do we see the force of the contention that it does not relate to the subject of the principal section, which it plainly supplements.

Moreover, as urged by the attorney general, the general rule is applicable here, that a statute whether involving the title of the act or the subject matter thereof, should be construed liberally and in a sense most favorably, to bring it within the constitutional limitation. *State* v. *Mines, supra; Shields* v. *Bennett, supra.* The doubt should always be resolved in favor of the validity of the statute. *State* v. *Haskins,* 92 W. Va. 632, 638, and our other cases therein cited.

And as particularly applicable to the contention of the defendants' counsel to the contrary, we are cited to high authority for the proposition that a section of a statute may be amended by adding thereto a new section, provided the section added relates to and is germane to the subject matter of the act proposed to be amended. *Settlers' Irr. Dist.* v. *Settlers' Canal Co.,* 14 Idaho, 506; 36 Cyc. 1054-1055, par. B. 2. And we have decided that if the title contains any reference to the law to be amended, or designation of it, by

which it can with reasonable certainty be determined what law was intended, it is sufficient. *Roby* v. *Sheppard, supra.* And it has been held by the very highest authority in the country that the title of the amendatory act need not specifically enumerate the section of the act amended. *Knights Templars' Etc. Indemnity Co.* v. *Jarman,* 187 U. S. 197.

Another ground of demurrer pressed on the part of defendants' counsel relates to that provision of section 35a which provides as an additional punishment for violation of the statute, namely, that ''no license shall be granted by any county court for any of the purposes set out in this section for a period of one year from the day of such conviction, in the particular room for which license was granted.'' As already noted this part of the statute is not involved. The judgment below does not cover it. That provision might confront defendants if they should within a year apply for a new license to the licensing body, to do business in the same places. The contention is that the statute to that extent at least contravenes the fourteenth amendment to the federal constitution, in as much as it operates to deprive one of his property without due process of law. The question is, of course, a moot one in this case. It does not arise, and we indicate no opinion on that subject. It would not be proper to do so. *State ex rel. Motor Finance Corp.* v. *Jackson,* 95 W. Va. 365.

The only other question which we deem worthy of consideration, after disposing of the questions already considered, is the question relating to the lack of knowledge of defendants of the ages of the prosecuting witnesses, and their good faith in permitting them to play pool in their respective places of business. The statute makes no allowance for such lack of knowledge, or of good faith. The statute makes the offense complete when a person under the prescribed age is allowed to play at the game in the place of business of the licensee, not whether the accused knowingly, or in good faith, does so. He acts at his peril. He must know the fact. The rule applied in *State* v. *Barr,* 37 W. Va. 1; *State* v. *Farr,* 34 W. Va. 84; and *State* v. *Smith,* 61 W. Va. 329, 332, involving sales of intoxicants to minors, is applicable. In the latter case, quoting from Bishop on Statutory Crimes, we said that when

the statute is silent, as it is here, as to defendant's intent or knowledge, the indictment need not allege nor the government's evidence show that he knew the fact. Wherefore the State's instructions so advising the jury were proper, and the defendants' to the contrary were properly denied.

For the reasons aforesaid, we affirm the judgment in each case.

*Affirmed.*