STATE OF WEST VIRGINIA

*v.*

JOHN REXROAD

(No. 12194)

Submitted January 22, 1963.        Decided July 9, 1963.

*Bean & Hamilton, Ralph J. Bean, John H. Hamilton,* for plaintiff in error.

*C. Donald Robertson,* Attorney General, *George H. Mitchell,* Assistant Attorney General, for defendant in error.

BROWNING, JUDGE:

Defendant, John Rexroad, was found guilty of conspiracy to commit murder of the second degree in the Circuit Court of Hardy County and was sentenced to serve five to eighteen years in the state penitentiary, which sentence was suspended, to which judgment this Court granted a writ of error on October 15, 1962. Inasmuch as the case must be reversed for reasons hereinafter stated, only so much of the evidence as will show the background of the case will be related.

The deceased, Eldridge Ritter, was found in his automobile, in the Town of Moorefield, about forty feet from

the highway, shortly after four o'clock on the morning of July 14, 1960, bleeding severely from three cuts upon his right arm. The injuries resulted in his death at approximately 4:50 a. m. and medical testimony showed that they would normally be fatal within twenty to forty minutes after the occurrence thereof. A piece of window glass fitting a broken window in Ritter's automobile was afterwards found in front of the defendant's place of business. It was subsequently developed that defendant and several others had gathered at defendant's garage or shop during the early hours of that morning drinking intoxicating liquors, and that an altercation occurred between the deceased and one Wilson Zirk inside the place of business. There is no positive testimony as to how Ritter was injured or the piece of glass broken out of the window of his car in front of the shop. Wilson Zirk was indicted for the murder of Ritter and tried in December of that year under that indictment, the result being that the jury was unable to agree on a verdict. On February 21, 1961, a joint indictment was returned against the defendant, John Rexroad, and Junior B. Miley, Nolan Shreve, Page Weese and Wilson C. Zirk, in the following words and figures:

"And the jurors aforesaid, upon their oaths present that John Rexroad, Junior B. Miley, Nolen Shreve and Page Weese, on the _____ day of July, 1960, in the County and State aforesaid, were present at the time and place the serious wound was inflicted by said Wilson C. Zirk against Eldridge Lee Ritter; that after said serious wound was inflicted upon him the said Eldridge Lee Ritter lived and languished for approximately thirty to sixty minutes, after which, as a result of said serious wound, the said Eldridge Lee Ritter, in the County aforesaid, did die; that after the aforesaid serious wound was inflicted upon the said Eldridge Lee Ritter, the said John Rexroad, Junior B. Miley, Nolen Shreve, Page Weese, and Wilson C. Zirk, did feloniously wilfully, maliciously, deliberately and unlawfully counsel, conspire, aid, abet and assist in the commission and consummation of said murder, and in the suppression of evidence concerning the same, by:

"1. Transporting and carrying the said Eldridge Lee Ritter while he was yet living, together with the Cadillac automobile being then owned and occupied by said Eldridge Lee Ritter, to a deserted place near Keppie's Fruit Stand on the south edge of the Town of Moorefield, in Hardy County, West Virginia, and there desert him and leave him to die as a result of the bleeding and hemorrhaging of the aforesaid serious wound.

"2. By conspiring and agreeing not to give aid, assistance and help to the wounded Ritter while living, in order to save the said Ritter from dying from the wound inflicted.

"3. By deserting and abandoning the wounded Ritter at a place and time, and under then existing circumstances, whereby the wounded Ritter could not receive or obtain help to save his life.

"4. By recongregating at the scene where the serious blow was rendered and agreeing among themselves not to disclose or inform anyone in regard to the actual happenings and events which lead up to and finally consummated in the death of the said Ritter, all the aforesaid against the peace and dignity of the State."

The five persons jointly indicted moved for separate trials, which motions were overruled by the trial court and, upon application to this Court, a writ of prohibition was issued prohibiting the trial court from requiring the petitioner, Zirk, to submit to a trial jointly with the other accused persons. *State ex rel. Zirk* v. *Muntzing, Judge,* 146 W. Va. 349, 120 S. E. 2d 260. The Court was not called upon to consider the sufficiency of the indictment, the sole question being the right of a person jointly indicted with others for felony to elect to be tried separately. Zirk was thereafter tried separately on the instant indictment, the trial resulting in his acquittal and, subsequent thereto, a second trial was attempted to be held on the original indictment for murder. Zirk again sought a writ of prohibition in this Court, which was awarded, and the sufficiency of the indictment was not placed directly in issue, the Court stating: "Upon the trial of the second indictment [the one involved herein] the

charge of conspiracy was either abandoned by the State or there was not sufficient evidence to support it; . . . The allegations of the plea of former jeopardy, which as heretofore indicated are admitted to be true and correct, established beyond question that upon the trial of the second indictment the State attempted to convict the petitioner of the crime of murder; that the offense of which he was acquitted is the same offense with which he is charged in the indictment for murder; . . . ." *State ex rel. Zirk* v. *Muntzing, Judge,* 146 W. Va. 878, 122 S. E. 851. The defendant herein demurred to, and moved to quash, the indictment substantially on the grounds that the same fails to fully and plainly inform him of the charge against him and does not charge any violation of the laws of this state, thus, the present case is the first in which the sufficiency of the indictment is directly raised.

While the policy of modern courts is to disregard mere technical objections to an indictment and to require only that the indictment fully state the essential elements of the offense charged, *State* v. *Viquesney,* 103 W. Va. 392, 137 S. E. 538, the indictment should allege in clear, simple and positive language the essential ingredients of the offense with such definiteness and certainty as to fully apprise the accused of the nature and cause of the accusation against him. *State* v. *Crummitt,* 129 W. Va. 366, 40 S. E. 2d 852; 27 Am. Jur., Indictments and Informations, §§ 51, 57; 42 C.J.S., Indictments and Informations, § 100. An indictment, though based upon a valid statute, which fails or omits to charge one of the material elements of the offense as defined by the statute is void. *Scott* v. *Harshbarger,* 116 W. Va. 300, 180 S. E. 187. If the facts alleged in the indictment do not constitute an offense within the terms and meaning of the law on which it is based, or if the facts alleged may be admitted as true and yet constitute no offense, the indictment is insufficient. 27 Am. Jur. 621, Indictments and Informations, § 54.

The statute under which the present indictment was found is as follows:

"If two or more persons under the name of 'Red

Men,' 'Regulators,' 'Vigilance Committee,' or any other name or without a name, combine or conspire together for the purpose of inflicting any punishment or bodily injury upon any other person or persons, or for the purpose of destroying, injuring, defacing, or taking and carrying away any property, real or personal, not their own, every such person, whether he has done any act in pursuance of such combination or conspiracy or not, shall be guilty of a misdemeanor, and, upon conviction, shall be fined not less than fifty nor more than five hundred dollars, and may, in the discretion of the court, be confined in jail not less than one nor more than twelve months.

"If any person, in pursuance of such combination or conspiracy, shall inflict any punishment or bodily injury upon another person, or shall destroy, injure, deface, or take and carry away, any property, real or personal, not his own, he shall be guilty of a felony, and, upon conviction, shall be confined in the penitentiary not less than one nor more than ten years; and if the death of any person shall result from the commission of such offense, every person engaged in the commission thereof shall be guilty of murder of the first degree, and, upon conviction thereof, punished as in other cases of murder of the first degree. If, upon the trial of an indictment hereunder, it be proved that two or more persons, the defendant being one, were present, aiding and abetting in the commission of the offense charged therein, it shall be presumed that such offense was committed in pursuance of such combination of conspiracy, in the absence of satisfactory proof to the contrary. And all persons who were present, aiding and abetting, at the commission of any offense mentioned herein, shall be deemed conspirators within the meaning hereof.

"Persons offending against any of the provisions of this section may be indicted therefor, either jointly or separately."

The statute is penal and as such must be strictly construed. *State* v. *Winkler*, 142 W. Va. 266, 95 S. E. 2d 57. The first paragraph thereof makes it a misdemeanor for any two or more persons to combine or conspire together for the purpose of inflicting bodily injury upon another or destroying,

damaging or carrying away any property whether there is any act done in furtherance of such conspiracy or not. The second paragraph makes it a felony to inflict injury to a person or damage property pursuant to such conspiracy and further provides that, if any person dies as a result of injury thus inflicted pursuant to such conspiracy, the conspirators shall be guilty of murder in the first degree.

We must therefore consider the indictment heretofore quoted in the light of the crime created thereby. The indictment, it will be noted, while charging the named defendants with being present at the time the wound was inflicted does not charge any conspiracy until "after the aforesaid serious wound was inflicted". The specifications, in essence, charge (1) the transportation, while still living, of Ritter, to the edge of town where he was deserted and left to die as a result "of the aforesaid serious wound"; (2) in conspiring not to give aid to Ritter in order to save him from dying from the "wound inflicted"; (3) by deserting Ritter under the circumstances whereby he could not receive or obtain help; and (4) by recongregating at the scene "where the serious blow was rendered" and agreeing among themselves to suppress any information as to the events leading to Ritter's death. It will thus be seen that the indictment does not include the basic element required by the statute in that none of the acts alleged to be in furtherance of a conspiracy occurred until *after* the wound had been inflicted. If the state had proved every single allegation contained in the indictment, which we do not decide, and no more, it would not have proved the crime of conspiracy to inflict bodily injury or damage property as defined by the statute. This being so, the indictment does not charge an offense and the demurrer to the indictment should have been sustained.

It is true that in the second paragraph of the statute it is provided that "If, upon the trial of an indictment hereunder, it be proved that two or more persons, the defendant being one, were present, *aiding and abetting in the commission of the offense charged therein, it shall be presumed that such offense was committed in pursuance of such combination of*

*conspiracy. . . ."* (Italics supplied.) This sentence, by its own words, only creates a presumption of law relating to the amount of proof which will sustain a valid charge of conspiracy. It does not require citation of authority to say that incontrovertible proof of the most heinous crime will not sustain the conviction of a defendant of a crime with which he is not charged.

In view of the foregoing, it is unnecessary to comment on the other assignments of error herein. However, it is noted that state's instruction No. 9, which was given, permitted the jury to return a verdict of guilty of a conspiracy to commit: murder in the first degree; murder in the second degree; and voluntary manslaughter, in contradiction of the statute, which in plain terms provides that if, in pursuance of a conspiracy to inflict personal injury, an injury is inflicted from which death ensues ". . . every person engaged in the commission thereof shall be guilty of murder in the first degree. . . ." *State ex rel. Zirk v. Muntzing, Judge,* 146 W. Va. 878, 122 S. E. 2d 851.

The judgment of the Circuit Court of Hardy County, entered February 20, 1962, is reversed and the case remanded with directions to dismiss the indictment.

*Reversed and remanded with directions.*