*In Re:* Assessment of Certain Real Estate of

Eastern Associated Coal Corp., *a corporation*

(No. 13309)

Submitted January 16, 1974.          Decided April 9, 1974.

*Jackson, Kelly, Holt & O'Farrell, Lee O. Hill and Forrest H. Roles* for petitioner.

*Patrick Casey,* Prosecuting Attorney, *Steven C. Hanley,* Assistant Prosecuting Attorney for Assessor.

SPROUSE, JUSTICE:

This is an appeal from an order of the Circuit Court of Kanawha County which denied an appeal to Eastern Associated Coal Corporation, the appellant in this proceeding. The appeal sought by Eastern before the circuit court was from an order of the County Court of Kanawha County which was acting as the Board of Equalization and Review, but which will be referred to as the county court. Eastern Associated Coal Corporation

is hereinafter called the taxpayer. At the hearing, the county court refused to permit the taxpayer to introduce evidence concerning the valuation of its coal property for tax purposes.

Taxpayer is the owner of several tracts of land in Pratt and Cabin Creek Districts in Kanawha County, containing approximately 21,793 acres. In 1971, the property was assessed by order of the Circuit Court of Kanawha County at $1,690,433, which included an assessment of $1,529,869 for the coal underlying the property. The 1972 assessment made by the Kanawha County Assessor was $3,976,638. It is the proceedings instituted by the taxpayer to contest this assessment which are the subject of this appeal.

In 1970, the Assessor of Kanawha County designed a new assessment form, and designated it KCM-170. This form requires extensive information regarding the property, its uses, the nature and extent of its coal deposits, and past, present and future operations connected with production. In relation to each seam of coal, the owner must supply the name, elevation, average BTU, percentage of impurities, percentage of recovery to date, total measured, indicated and inferred tons, number of tons mined in each of the last five years, estimated total reserves to be mined in the next eighteen years, estimated percentage of final recovery, and average gross sales receipts for the past three years. Additionally, the form requests a breakdown of production costs, administrative expenses, and selling costs. This is considerably more detailed information than was required on the forms used by assessors in previous years.

This form was furnished to taxpayer for the tax year 1971, but it refused to utilize it. That refusal was the subject of litigation not involved in this appeal. KCM-170 was again forwarded by the assessor to the taxpayer for the 1972 tax year. Taxpayer filed the form as completed on November 8, 1971, before the required deadline. Certain blocks were completed, others were left blank, and others

were either marked "complete data not available" or "no data available". Taxpayer maintained that it completed the form as fully as possible with the information in its possession. It advanced a number of reasons why all of the information was not furnished, principally, that it was a lessor of coal interests rather than an operator, and did not operate the mines. According to this contention, other completely separate business entities operated the coal mines, and information such as that relating to quality of coal and production tonnage was in the sole possession of the operating company. The assessor thereafter assessed the coal property, and added a ten percent penalty for taxpayer's failure to complete the form. On February 21, 1972, taxpayer filed a timely application for review of the assessment with the County Court of Kanawha County. The hearing was held on February 24, 1972.

At the hearing, the assessor asked the county court not to consider any evidence offered by taxpayer, moving to deny it "any remedy whatever for the attempted correction of the assessment * * * for reason that the protestant has no legal standing to complain because * * * [it had not supplied information as required by] Chapter 11, Article 3, Section 10 of the West Virginia Code, as amended."

Taxpayer's response was first, that they had completed Form KCM-170 with all of the information available to it; and second, that the assessor was not authorized by statute to use Form KCM-170. Taxpayer atttempted to present testimony concerning its bona fide attempt to complete KCM-170. The county court ruling in favor of the assessor, refused to permit such evidence. The county court likewise refused to permit taxpayer's counsel to cross-examine the assessor's only witness concerning this issue. Taxpayer also offered evidence to prove its contention that the valuation formula used by the assessor was erroneous, and presented its theory of the correct valuation of the property. The county court refused to

receive any of this evidence, but permitted taxpayer to place it in the record by way of avowal.

This Court, in a separate opinion, has just disposed of the first issues raised by the appellants. The same Form KCM-170 involved here, and the related question as to the legality of the information used by the assessor for valuation, was held valid in *In re Assessment of Shonk Land Company, a corporation, and In re Assessment of Cedar Coal Company, a corporation,* 157 W.Va. 757, 204 S.E.2d 68.

The remaining issues are whether the assessor met the burden of proving that the taxpayer failed or refused to furnish information required by the assessor, and whether the county court erred in refusing to permit the taxpayer to introduce evidence showing they had not failed or refused to furnish such information.

The pertinent part of Chapter 11, Article 3, Section 10, Code, 1931, as amended, is as follows:

> "If any person, firm or corporation, including public service corporations whose duty it is by law to list any real estate or personal property for taxation, shall refuse to furnish a proper list thereof or refuse to list within the time required by law, or to make such oath as required by this chapter; or if any person, firm or corporation, including public service corporations, shall refuse to answer or shall answer falsely any question asked by the assessor or by the tax commissioner, *or shall fail or refuse to deliver any statement required by law,* he or it * * * shall be denied all remedy provided by law for the correction of any assessment made by the assessor or by the board of public works. * * * " (Emphasis supplied.)

In interpreting the part of this section which denied a taxpayer all remedy for the correction of his assessment for failure to list his property, this Court has said:

> " * * * The burden was on the state, if it wished to resist the application of the [taxpayer] on the ground that they made no statement, to have

submitted evidence thereon to the county court. 'It is well settled that whoever asserts a claim or defense, which depends upon a *negative,* must, as in other cases, establish the truth of the allegation.' * * * " *Gilbert v. County Court of Wyoming County,* 121 W.Va. 647, 649, 5 S.E.2d 808, 809.

The appellant contends the assessor must prove a willful refusal on the part of the taxpayer to submit Form KCM-170. We cannot interpret the provisions of this statute in this manner. The language is clear and unambiguous, and is to be applied rather than construed. *State ex rel. Dolin v. City of Huntington,* 154 W.Va. 460, 176 S.E.2d 683. It provides simply for the denial of any remedy to the taxpayer if he fails or refuses to furnish appropriate information. There is nothing to suggest that the legislature intended to superimpose a requirement of willfulness upon the language "refuse" or "fail". The question of whether the assessor met the burden of proving the refusal or failure as required by *Gilbert* is a more serious question.

The assessor introduced into evidence, taxpayer's Form KCM-170, and if taxpayer had introduced nothing to negative its inferences, the incomplete form would have been sufficient evidence to meet this burden of proving that the taxpayer failed or refused to provide the needed information. The taxpayer, however, not only offered testimony explaining the reason for not fully completing the form, but the county court refused to permit them to cross-examine the only witness in the case, in the face of the contention that his testimony would have been favorable to taxpayer.

The county court's action in refusing to hear evidence concerning the correctness of the assessor's valuation of taxpayer's property, and the formula he used, is not in issue. If the county court was right in ruling that the taxpayer should be denied any remedy for correcting his assessment because of his failure or refusal to furnish information, evidence as to valuation was properly

excluded. The question here is solely whether taxpayer had a right to offer evidence on its alleged failure or refusal to furnish information.

We think it had such right. In the first place, the county court ruled erroneously that the assessor sustained the burden of proof. Having the opportunity to receive evidence from the proponents of both sides, and receiving evidence from only one, it can hardly be said that the county court made a judicial determination as to whether the burden of proof had been met.

Tax provisions penal in nature, denying a taxpayer any right to a hearing on the question of whether the provisions apply to him, have been held unconstitutional. *Central of Georgia Railway Company v. Wright,* 207 U.S. 127. Chapter 11, Article 3, of course, provides for a full range of review, so there is no doubt that the provisions of Code, 1931, 11-3-10, as amended, providing the penalty in question, are constitutional. 72 AM. JUR. 2d, *State and Local Taxation,* Section 727, pages 59, 60.

Article III, Section 10 of the Constitution of West Virginia provides: "No person shall be deprived of life, liberty, or property, without due process of law, and the judgment of his peers." A state, of course, may legitimately impose a penalty against a citizen for violating tax collection procedures. *State v. Page,* 100 W.Va. 166, 130 S.E. 426. The taxing body may not, however, arbitrarily hold a taxpayer in violation when they are not only standing in the wings with information, but are thrusting upon the reviewing authorities information which they contend will exonerate them from the harsh penalties, and the reviewing body refuses to consider it. "Due process" right to a hearing under Code, 1931, 11-3-10, as amended, has not previously been considered, and certainly "due process" rights under taxing statutes are more restricted than in other areas of the law. *Spitcaufsky v. Hatten,* 353 Mo. 94, 182 S.W.2d 86. Nevertheless, the right to be heard belongs under the same general constitutional umbrella regardless of the

procedural law involved. The right to be heard is fundamental to "due process". *State ex rel. Staley v. Hereford,* 131 W.Va. 84, 45 S.E.2d 738; *Floyd v. Chesapeake & Ohio Railway Company,* 112 W.Va. 66, 164 S.E. 28; *Walter Butler Building Company v. Soto,* 142 W.Va. 616, 97 S.E.2d 275. This Court has said: "No procedure is just which deprives a man of the opportunity to be heard respecting the justice of the punishment to be inflicted." *Floyd v. Chesapeake & Ohio Railway Company, supra* at 73, 164 S.E. 28, 31. We have also said: "The underlying purpose of the due process of law clauses [of Article III, Section 10] * * * is to guarantee that the rights of persons may be dealt with in judicial proceedings only after due notice and a fair and reasonable opportunity for a hearing in accordance with procedure which has been ordained for the preservation of personal and property rights." *Walter Butler Building Company v. Soto, supra* at 636, 97 S.E.2d 275, 287.

Eastern had a right to be heard before the imposition of the penalty, and the refusal of that right deprived it of due process of law under Article III, Section 10 of our Constitution. We do not consider the merits of the taxpayer's evidence as to whether it establishes a justification for the incomplete information which it submitted to the assessor. Our holding is that the taxpayer had the right under Article III, Section 10 of our Constitution to have that evidence considered, and the arbitrary refusal of the county court to consider it comprises an unconstitutional application of an otherwise constitutional statute.

Under the doctrine announced in *In re Morgan Hotel Corporation,* 151 W.Va. 357, 151 S.E.2d 676, this case cannot be remanded to the county court for further evidence on this issue, inasmuch as by the passage of time, the county court is deprived of any further jurisdiction. The taxpayer has a right under these circumstances to have the question of valuation decided by the circuit court on the present record.

As was said in *In re Morgan Hotel Corporation, supra* at 363, 151 S.E.2d 676, 680:

> " * * * the defendants should not be heard to object to the circuit court's deciding the cases on the records made before the county court on the ground that the records contain no evidence because, * * * the landowners demanded a hearing in order that testimony might be taken and reported so that it would be available for appellate purposes, but that the county court, * * * adjourned *sine die* without having granted hearing to the landowners."

Here, the County Court of Kanawha County granted a hearing, but wrongfully refused taxpayer the right to introduce evidence. This is equivalent to no hearing.

This case is, therefore, reversed and remanded to the Circuit Court of Kanawha County with directions to consider and decide the assessment based on the present record.

*Reversed and remanded*
*with directions.*

Justice Haden, deeming himself disqualified, did not participate in the consideration of this case.